**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SIEGEL & SIEGEL, P.C., and SIEGEL LAW GROUP, P.C, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY,<br><br>      Defendant. | Civil Action No. _____<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Siegel & Siegel, P.C. and Siegel Law Group, P.C. ("Plaintiffs"), individually and on behalf of all others similarly situated, for their Class Action Complaint against Defendant Hartford Casualty Insurance Company ("Hartford") states the following:

## NATURE OF ACTION

1.  According to information published by the Insurance Information Institute, the U.S. insurance industry collected net premium of $1.22 trillion in 2018. Premiums record by the property/casualty insurers accounted for 51% of that amount. Between 2014 and 2018, these insurers wrote net premiums each year of between $497 billion to $612.6 billion but only incurred losses of between $277.7 billion and $360.9 billion.

2.  Plaintiff Siegel & Siegel, P.C. is a law firm focusing on the practice areas of trusts and estates, bankruptcy, real estate, and commercial litigation. Plaintiff Siegel Law Group, P.C., is the leaseholder at One Penn Plaza to which Siegel & Siegel, P.C. and another firm in Suite 2414 are subtenants. Plaintiffs' firms are located at One Penn Plaza in the heart of New York City—a

hotspot for COVID-19. As a result of COVID-19 and Stay at Home Orders (as defined below), Plaintiffs have been forced to greatly reduce, and at times, completely halt its operations.

3.      Plaintiffs purchased an all-risk commercial property insurance policy from Hartford to protect it in the event of property loss and business interruption. COVID-19 and the resulting response by state and local governments has caused physical loss of Plaintiffs' property and has interrupted Plaintiffs' business. Yet, as of this date, Hartford has refused to honor its promise to provide the protection that Plaintiffs purchased. Moreover, Plaintiffs are not unique. The insurance industry appears to be taking a uniform approach to the current pandemic: deny coverage even when the policy they drafted and offered to insureds, and the policy paid for by the insureds, does not contain an exclusion for pandemic-related or virus-related losses. Plaintiffs' policy with Hartford is one such policy and exemplifies the broken promise from insurance companies across the country.

4.      This is a class action for declaratory judgment and breach of contract arising from Hartford's refusal to pay claims related to COVID-19 as required by their property insurance agreements it sold to Plaintiffs and other businesses.

5.      The novel coronavirus, named "severe acute respiratory syndrome coronavirus 2" or "SARS-CoV2", has spread widely and rapidly across the United States. The illness related to SARS-CoV2 is "novel coronavirus disease 2019," commonly abbreviated to "COVID-19."

6.      Over 100,000 Americans died of COVID-19 as of the date of this filing, according to the CDC.

7.      A growing body of evidence suggests that the virus transmits both through droplets, when someone sneezes and coughs, and aerosols, which are produced by normal breathing.

8.      Aerosols are particularly concerning because unlike droplets, which are suspended only for a few seconds, aerosols are water droplets suspended in air and can remain suspended for hours, until gravity ultimately forces them to the nearest surface below.

9.      Consequently, aerosols can spread widely through air flow and settle on surfaces hundreds of feet away from any infected individual. Thus, someone not even in the vicinity of an infect person can unknowingly touch an infected surface, later touch their face, and become infected.

10.     In an effort to combat the virus and slow the spread of COVID-19, state and local governments across the country imposed directives requiring residents to remain in their homes except to perform certain "essential" activities, like shopping for food, going to see the doctor, or getting fresh air.

11.     The state and local directives typically businesses deemed "non-essential" to be closed and in-person work is not permitted. But even businesses classified as "essential" have been severely impacted by the pandemic. For example, "essential" businesses have had to increase the frequency of cleaning, reduce hours, and install new protective barriers between employee and customer, limit the number of customers allowed on the premises and provide personal protective equipment to its workforce. But even with those precautions, many such business have had great difficulty retaining employees who fear becoming infected at work.

12.     Plaintiffs' law firms are located in New York City.

13.     The City of New York, New York and the State of New York have issued stay-at-home orders (hereinafter, "Stay at Home Orders"). Although these Stay at Home Orders have been relaxed to some limited extent, some restrictions remain in effect and continue to cause the suspension of non-essential and essential businesses.

14.     The Stay at Home Orders and the transmission of COVID-19 have had a devasting effect on Plaintiffs' business. Because of the Stay at Home Orders and the transmission of COVID-19, Plaintiffs have had to shut down their law firm.

15.     Plaintiffs' premises have been designated by county and state orders as affected with COVID-19. In fact, there have been multiple confirmed cases of COVID-19 within the building in which Plaintiffs operate their law firm. Plaintiffs have suffered loss of or damage to property under the meaning of the policy. Public ingress and egress to the property is currently precluded or substantially limited due to the Stay at Home Orders and it has been infected with COVID-19. Plaintiffs have suffered direct physical loss to the property.

16.     According to the World Health Organization ("WHO"), the incubation period for the coronavirus is at least 14 days.

17.     The New England Journal of Medicine reports the first reported case in the United States was on January 20, 2020 in the State of Washington[1]—weeks earlier than previously reported, suggesting that the virus has been circulated in the United States far longer than previously assumed. It is likely customers, employees, and/or other visitors to the insured property over the last two-and-a-half months were infected with the coronavirus and thereby infected the insured property with the coronavirus.

18.     The transmission of COVID-19 and the Stay at Home Orders have otherwise affected Plaintiffs or other Class members' business. For example, customers cannot access the property due to the Stay at Home Orders. Suppliers have also been similarly restricted by the pandemic.

---

[1] https://www.nejm.org/doi/full/10.1056/NEJMoa2001191 (last accessed April 29, 2020)

19.     But Plaintiffs, like countless other businesses, prepared for an unexpected event like the COVID-19 pandemic. Specifically, they purchased property insurance from Hartford, bearing Policy No. 65 SBA RZ9768 DX (the "Policy"). Attached hereto as Exhibit "A" is a true and correct copy of the Policy.

20.     The Policy is comprised of a number of forms and endorsements that define the scope of coverage. Upon information and belief, the forms and endorsements used in the Policy are materially the same as those policies held by the members of the proposed class.

21.     The Policy is an all-risk policy, meaning it covers all losses to Covered Property unless specifically excluded. The term "loss" is not defined by the Policy.

22.     As set forth below, the Policy also provides coverage for:

a.      Losses sustained due to the necessary suspension of operations ("Business Income" coverage) (Exhibit A, p. 38);

b.      Expenses incurred to minimize the suspension of business ("Extra Expense" coverage) (Exhibit A, p. 38);

c.      Interruption of business caused by an order from a civil authority ("Civil Authority" coverage) (Exhibit A, p. 39); and

d.      Expenses necessary to protect Covered Property from further damage in the event of a loss ("Sue and Labor" coverage) (Exhibit A, p. 48).

23.     The Policy defines "suspension" to include the "slowdown or cessation of your business activities[.]"

24.     In addition, the Policy requires Plaintiffs to "protect Covered Property from further damage[.]"

25.    On or about March 20, 2020, Plaintiffs notified Hartford of a loss covered by the Policy, seeking coverage related to COVID-19.

26.    On April 14, 2020, Hartford denied Plaintiffs' claim.

27.    As Hartford denial of Plaintiffs' claim illustrates, Hartford has uniformly refused to pay its insureds under its standard policy for losses related to COVID-19. Hartford is in breach of its obligations by refusing to provide coverage and pay the claim.

28.    Hartford has caused material harm to Plaintiffs and the proposed class by refusing coverage under the Policy.

## PARTIES

29.    Plaintiff Siegel & Siegel, P.C. is a New York professional corporation with its principal place of business in New York, New York.

30.    Plaintiff Siegel Law Group, P.C. is a New York professional corporation with its principal place of business in New York, New York.

31.    Defendant Hartford Casualty Insurance Company is an Indiana corporation with its principal place of business in Hartford, Connecticut.

## JURISDICTION AND VENUE

32.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the class is a citizen of a state different from Hartford, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

33.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiffs' cause of action occurred in this judicial district and

division. The Policy at issue covers Plaintiffs' offices located in New York County and Hartford issued the Policy with New York endorsements.

## **FACTUAL BACKGROUND**

34.    COVID-19 and the Stay at Home Orders forced Plaintiffs to close their law firm.

35.    Effective 8:00 p.m. on March 17, 2020, the Mayor of the City of New York issued an Emergency Executive Order No. 101, which order suspended the procurement of goods, services or construction unless an agency head determines such procurement is necessary to respond to the emergency.[2]

36.    Effective 8:00 p.m. on March 22, 2020, the Governor of New York ordered all non-essential businesses to close and all non-essential members of the workforce must stay home.[3]

37.    After these Stay at Home Orders were issued, Plaintiffs requested that their legal services be deemed essential and necessary. However, on March 26, 2020, Plaintiffs were specifically designated by the State of New York as a 100% non-essential business and therefore had to close the law firm and could not access the law firm premises.

38.    Furthermore, multiple individuals with confirmed cases of COVID-19 entered the building in which Plaintiffs' law firm is located.

39.    Although certain aspects of these Stay at Home Orders have been lifted, Plaintiffs are still subject to restrictions on their ability to operate.

40.    At least 42 states and countless local governments issued substantially similar directives. The purposes of these orders were to mitigate and slow the spread and impact of COVID-19.

---

[2] https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-101.pdf
[3] https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.8.pdf

41.    The Stay at Home Orders explicitly required that Plaintiffs close their business operations. And Plaintiffs lawfully complied with these Orders and closed its business.

42.    According to the Center for Disease Control ("CDC"), everyone is at risk of getting COVID-19. The virus can spread by respiratory droplets when an infected person coughs, sneezes, or talks. A person can become infected from respiratory droplets or potentially by touching a surface or object that has the virus on it and then by touching the mouth, nose, or eyes.[4] According to studies, the virus can live on surfaces for several days if not longer.[5]

43.    In addition, some scientific publications have reported finding COVID-19 in the air. The New England Journal of Medicine reported finding that experimentally produced aerosols containing the virus remained infectious in tissue-culture assays, with only a slight reduction in infectivity during a 3-hour period of observations. "Aerosols from infected persons may therefore pose an inhalation threat even at considerable distances and in enclosed spaces…"[6]

44.    A consensus appears to be emerging that COVID-19 can also travel through the air via aerosols. For example, aerosol scientist Lidia Morawska of the Queensland University of Technology in Brisbane, Australia told *Nature* that, "In the minds of scientists working on this, there's absolutely no doubt that the virus spreads in the air. This is a no-brainer."[7]

45.    An April 2020 study published in the journal *Emerging Infectious Diseases* found a wide distribution of COVID-19 on surfaces and in the air about *13 feet* from patients in two hospital wards in Wuhan, China, leading the authors to conclude that the virus spreads in aerosols in addition to large respiratory droplets. The investigators found evidence of the virus in swabs of

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf
[5] https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf
[6] https://www.nejm.org/doi/full/10.1056/NEJMc2009324
[7] https://www.nature.com/articles/d41586-020-00974-w

floors, computer mice, trash bins, bed handrails, patients' face masks, health workers' personal protective equipment, and air vents.[8]

46.     The authors surmised that the high rate of positivity for floors samples in the hospital strongly suggest that droplets fall to the ground and then are spread via patients' shoes. For example, every sample tested from the pharmacy floor tested positive for COVID-19 even though no patients were housed there.[9]

47.     Another study conducted in Wuhan indicates that staff movement, floor cleaning, and the removal of personal protective equipment could transmit the virus through the re-suspension of virus-contaminated aerosols.[10]

48.     Kimberly Prather, an aerosol chemist at the University of California, San Diego told *Science* magazine: "I'm relieved to see aerosolization is accepted. This added airborne pathway helps explain why it is spreading so fast."[11]

49.     Aerosol particles are held in the air by physical and chemical forces. The suspended particles remain for *hours or more*, depending on factors such as heat and humidity. If virus particles can be suspended in air for more than a few seconds, like, for instance, the measles virus can, then anyone passing through could become infected by a pathogenic aerosol cloud. And the virus can travel long distances and land on surfaces, only to be stirred back up into the air later by cleaning or other disturbances.

50.     The SARS virus that caused a 2003 epidemic is a coronavirus and is similar to COVID-19 (technically named SARS-CoV-2). As a result, the behavior of SARS during the 2003 epidemic provided evidence about any aerosol risk from COVID-19.

---

[8] https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces
[9] https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces
[10] https://www.biorxiv.org/content/10.1101/2020.03.08.982637v1
[11] https://www.sciencemag.org/news/2020/04/you-may-be-able-spread-coronavirus-just-breathing-new-report-finds#

51.     A 2014 analysis published in the journal *Clinical Infectious Diseases* investigated a seemingly puzzling outbreak in a Hong Kong apartment complex whose residents had not been in close contact with each other.[12] The study found that "airborne spread was the most likely explanation, and the SARS coronavirus could have spread over a distance of 200 meters," or about 600 feet.[13]

52.     The implications of airborne spread of the virus are extremely serious. Airborne spread means that the virus can travel long distances from any infected person. It can then infect someone who unknowingly walks through a pathogenic cloud. It can also infect someone by settling on a physical surface, which someone touches and later becomes infected. And regardless of the transmission method, the evidence suggests that COVID-19 can be transmitted by shoes even once it reaches the ground.

53.     State and local governments have determined that without the Stay at Home Orders, COVID-19 could spread rampant throughout the community.

54.     The Orders in and around Plaintiffs' place of business also explicitly acknowledge that COVID-19 causes direct physical damage and loss to property. For example, the City of New York Order explicitly stated that COVID-19 "is causing property loss and damage[.]"[14]

55.     In order to protect themselves against risks like COVID-19, Plaintiffs purchased the Policy from Hartford. The Policy was in effect at the time of the outbreak and remains in effect today. Plaintiffs paid all premiums required by the Policy.

56.      Plaintiffs are the Named Insured under the Policy, which remains in force.

57.     Hartford is the effective and liable insurer of the Policy, and policies meeting the

---

[12] https://academic.oup.com/cid/article/58/5/683/365793
[13] *Id.*
[14] https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-101.pdf

class definition.

58.     Generally, under property insurance policies like those issued by Hartford to Plaintiffs and class members, the insuring agreements provide coverage for all risks of physical loss or damage to property, unless specifically excluded.

59.     The Policy is an all-risk policy, meaning it covers all losses to Covered Property unless specifically excluded.

60.     The Policy does not exclude or limit coverage for losses from viruses or communicable diseases like COVID-19. Nor does it contain a pandemic-exclusion clause.

61.     The risk of a virus like COVID-19 was foreseeable to, if not foreseen by, insurance companies like Hartford. The Insurance Services Office ("ISO"), an organization that provides policy writing services to insurers, has recognized for years that a virus can constitute physical damage to property. Specifically, in 2006, it announced the submission of an exclusion of loss "due to disease-causing agents such as viruses and bacteria."

62.     In connection with circulating the virus exclusion, ISO sent the following statement to state insurance regulators:

> Disease-causing agents may render a product impure (change its quality or substance) or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

63.    Despite the availability of a specific exclusion for viruses, Plaintiffs' Policy contains no such exclusion. Nor does Plaintiffs' Policy contain an exclusion for "pandemics," "communicable disease" or anything similar.

64.    Because damage due to viruses constitute physical damage and loss under the Policy and the Stay at Home Orders caused Plaintiffs to cease their operations. Plaintiffs' losses are covered under the Policy.

65.    The Policy provides coverage for several different types of losses arising from COVID-19 that are relevant here through specific Coverage Extensions.

66.    Hartford is obligated to pay for actual loss of **"Business Income"** sustained due to the necessary suspension of operations caused by direct physical loss or damage. Exhibit A at 38. "Business Income" means net income (net profit or loss before income taxes) that would have been earned or incurred in the absence of loss as well as continuing normal operating expenses, including payroll. *Id.* at 38. Coverage lasts during the "period of restoration" – beginning at the time of the direct loss and running through the earlier of the date the property is repaired or resumed at a new permanent location. *Id.* at 38, 52-53. A "partial or complete cessation" of business activities constitutes a "suspension" under the Policy. *Id.* at 38. Plaintiffs have suffered lost Business Income because they have suspended operations of their business due to COVID-19.

67.    Hartford also agreed to pay for **"Extra Expense."** Exhibit A at 38. "Extra expense" means "necessary expenses you incur due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property[.]" *Id.* Plaintiffs have suffered extra expenses because it has suspended operations due to COVID-19 to prevent physical damages to the premises by the presence or proliferation of the virus and the physical harm it could cause persons present there.

68.    Hartford also agreed to provide coverage from an interruption to business caused by an order from **"Civil Authority."** Exhibit A at 39. Specifically, Hartford agreed to "pay for the actual loss of 'income' you sustain and necessary 'extra expense' caused by action of civil authority that prohibits access to the premises" due to physical damage to property near the premises, the civil authority prohibits access to the premises" due to physical damage to property near the premises, the civil authority prohibits access to property immediately surrounding the damaged property, the premises is within the prohibited area, and the civil authority is taken in response to dangerous physical conditions." *Id.* Access has been restricted to premises described in the Declarations due to the presence and/or threat of COVID-19 in the immediate surrounding areas and related Stay-at-Home Orders.

69.    Finally, the Policy also provides **"Sue and Labor"** coverage, which requires the insured to "[p]rotect property from further damage" and, "if necessary for property protection, make reasonable repairs and keep a record of all repair costs." Exhibit A at 48. Plaintiffs have taken such steps by, for example, complying with the Stay at Home Orders.

70.    Losses caused by COVID-19 and the related state and local Stay at Home Orders triggered these provisions of Plaintiffs' Policy. Specifically, Plaintiffs' operations have been suspended, and it has lost revenue and business opportunities because it has been unable to open its retail locations and serve customers and potential customers.

71.    Plaintiffs submitted a claim to Hartford for coverage under the Policy, but Hartford has denied Plaintiffs' claim.

72.    Hartford's denial letter stated, in pertinent part:

As we understand the facts of your loss, one or more people who were suspected confirmed to be infected with the coronavirus were at your business premises. You then closed and/or cleaned that location to prevent the further spread of the virus to other people. This suspected contamination with the virus is not direct physical loss

or damage to property. You understandably took this action to protect other people from the virus. Additionally, it is our understanding that your business premises have remained closed due to the government orders to close most businesses in your area. Unfortunately, that does not trigger insurance coverage under your property policy.

## CLASS ACTION ALLEGATIONS

73.    Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiffs bring this action on behalf of itself and all others similarly situated, and seeks to represent the following nationwide classes:

a.    **Nationwide Declaratory Judgment and Injunctive Class.** All businesses subject to a Stay at Home Order that are covered by one of Hartford's policies which contains **Business Income, Extra Expense, Civil Authority,** and/or **Sue and Labor** coverage on terms similar to Plaintiffs' Policy ("Policies") which were in effect during the COVID-19 pandemic.

b.    **Nationwide Breach Class.** All policyholders of Hartford who made a claim and were denied coverage under one of Hartford's Policies due to COVID-19.

c.    **New York Subclass.** All policyholders who purchased one of Hartford's Policies in New York and were denied coverage due to COVID-19.

Excluded from the Class is Hartford, any entity in which Hartford has a controlling interest, any of the officers, directors, or employees of Hartford, the legal representatives, heirs, successors, and assigns of Hartford, anyone employed with Plaintiffs' counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

74.    Plaintiffs' Classes satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

75.    **Numerosity**. COVID-19 has impacted thousands of businesses across the country and Hartford is a nationwide insurer with, on information and behalf, hundreds or more policies issued with the relevant provisions. Consequently, the Classes each number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied. Moreover, because the members of the Classes are geographically dispersed across the country, and members of the Classes are geographically dispersed across the country, and members of the New York Subclass are geographically dispersed across the state, if not elsewhere, joinder of all Class members in a single action is impracticable. Class members and New York Subclass members may be informed of the pendency of this class action through direct mail or other means based on Hartford's records of its policyholders.

76.    **Commonality**. There are questions of fact and law common to the Classes that predominate over any questions affecting only individual members. The question of law and fact common to the Class arising from Hartford's actions include, without limitation, the following:

a.  Do the Policies cover losses resulting from the COVID-19 pandemic?

b.  Do the Policies cover losses resulting from state and local Stay at Home Orders requiring the suspension or reduction in business?

c.  Has Hartford wrongfully denied claims for business losses resulting from COVID-19 and/or the Stay at Home Orders?

d.  Does the **Business Income** coverage of the Policies cover losses caused by suspension of business due to COVID-19 and/or the Stay at Home Orders?

e.  Does the **Civil Authority** coverage of the Policies cover losses caused by suspension of business due to Stay at Home Orders issued by state and local governments?

    f.   Does the **Extra Expense** coverage of the Policies cover losses incurred to minimize the harm to Plaintiffs and members of the Class' premises because of COVID-19 and/or the Stay at Home Orders?

    g.   Does the **Sue and Labor** coverage of the Policies cover losses caused by suspension in business due to COVID-19 and/or Stay at Home Orders?

77.    **Predominance**. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein. Specifically, thousands of businesses are impacted by Hartford's denial of coverage for COVID-19 losses and their claims arise from a common factual predicate, which is the nationwide shutdown and suspension of activities due to the virus.

78.    **Typicality**. Plaintiffs' claims are typical of those of the Classes as Plaintiffs were subject to the same or similar policy provisions and the losses for all members relate to COVID-19 and the related closure orders and the claims arise from the same legal theories.

79.    **Superiority**. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Hartford has acted or refused to act on grounds generally applicable to the Class and New York Subclass. The presentation of separate actions by individual Class members and New York Subclass members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Hartford, and/or substantially impair or impede the ability of Class members to protect their interests.

80.    **Adequacy**. Plaintiffs are an adequate representative of the Class and New York Subclass because they are a member of the Class and its interests do not conflict with the interests

of those it seeks to represent.

81.    **Declaratory Relief and certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure**. On information and belief, Hartford has refused or intent to refuse, coverage due to COVID-19 business interruption and other covered losses for all, or most, policyholders with covered Policies and final injunctive and/or declaratory relief mandating that Hartford covers the losses of Class members is appropriate respecting the class as a whole.

82.    **Issue Class and Modification of Class Definitions and Creation of Subclasses**. In the alternative, Plaintiffs reserve the right to seek certification of one or more common issues pursuant to Rule 23(c)(4). In addition, Plaintiffs reserve the right to modify the definitions of the class and/or create subclasses either by amendment to the complaint or by motion for class certification, including but not limited to subclasses for policyholders with each of the following Policy provisions: **Business Income, Extra Expense, Civil Authority,** and/or **Sue and Labor** and/or other subclasses as may be appropriate or necessary.

### COUNT I – DECLARATORY AND INJUNCTIVE RELEF-- BUSINESS INCOME
**(On behalf of Nationwide Declaratory Judgment and Injunctive Class and New York Subclass)**

83.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

84.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

85.    An actual controversy has arisen and now exists between Plaintiffs and the class, on the one hand, and Hartford, on the other hand, concerning the respective rights and duties of the parties under the Policies. In March 2020, Plaintiffs requested coverage for COVID-19 related losses. Hartford thereafter denied coverage.

86.     Hartford is in breach of its obligations by refusing to provide coverage despite having sufficient information to evaluate and pay the claim. Moreover, upon information and belief, Hartford has refused other, similar claims claiming that COVID-19 losses are not covered by the Policy.

87.     Plaintiffs contend that Hartford has breached the Policies in the following respects:

  a.  Plaintiffs and the class have suffered losses covered by the Business Income coverage in the Policies.

  b.  Hartford is obligated to pay Plaintiffs and the class for those losses.

  c.   Hartford has failed to pay Plaintiffs and the class for those losses.

88.     Plaintiffs therefore seek a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Hartford unlawful and in material breach of the policies so that future controversies may be avoided.

89.     Pursuant to a declaration of the parties' respective rights and duties under the Policies, Plaintiffs further seek an injunction enjoining Hartford (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Business Income coverage; and (2) ordering Hartford to comply with the terms of the Policies in regard to coverage decisions.

### COUNT II – BREACH OF CONTRACT – BUSINESS INCOME
**(On behalf of Nationwide Breach Class and New York Subclass)**

90.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

91.     Plaintiffs and the class purchased property coverage policies from Hartford.

92.     The Polices are valid and enforceable contracts between Hartford and Plaintiffs and class members.

93.     Plaintiffs and the class substantially performed their obligations under the terms of the Policies including giving Hartford notice of the claim. Alternatively, Hartford has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

94.     Plaintiffs and the class have sustained a loss under the Business Income coverage in the Policies arising from the COVID-19 virus and associated state and local Stay at Home Orders.

95.     Hartford has denied claims for Business Income coverage related to COVID-19 on a uniform and class-wide basis, breach of the Policies.

96.     As a direct and proximate result of Hartford's breaches, Plaintiffs and the class have sustained damages in an amount to be determined at trial.

## COUNT III – DECLARATORY AND INJUNCTIVE RELIEF – CIVIL AUTHORITY
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class and New York Subclass)

97.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

98.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

99.     An actual controversy has arisen and now exists between Plaintiffs and the class, on the one hand, and Hartford, on the other hand, concerning the respective rights and duties of the parties under the Policies.

100.    Plaintiffs contend that Hartford has breached the Policies in the following respects:

101.    Plaintiffs and the class have suffered losses covered by the Civil Authority coverage in the Policies.

102.    Hartford is obligated to pay Plaintiffs and the class for those losses.

103.    Hartford has failed to pay Plaintiffs and the class for those losses.

104.    Plaintiffs therefore seek a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Hartford unlawful and in material breach of the Policies so that future controversies may be avoided.

105.    Pursuant to a declaration of the parties' respective rights and duties under the Policies, Plaintiffs further seek an injunction enjoining Hartford (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Civil Authority coverage in the Policies; and (2) ordering Hartford to comply with the terms of the Policies in regards to coverage decisions.

## COUNT V – DECLARATORY AND INJUNCTIVE RELEF – EXTRA EXPENSE
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class and New York Subclass)

106.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

107.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

108.    An actual controversy has arisen and now exists between Plaintiffs and the class, on the one hand, and Hartford, on the other hand, concerning the respective rights and duties of the parties under the Policies.

109.    Plaintiffs contend that Hartford has breached the Policies in the following respects:

110.    Plaintiffs and the class have suffered losses covered by the Extra Expense coverage in the Policies.

111.    Hartford is obligated to pay Plaintiffs and the class for those losses.

112.    Hartford has failed to pay Plaintiffs and the class for those losses.

113.    Plaintiffs therefore seek a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Hartford's unlawful and in material breach of the policies so that future controversies may be avoided.

114.    Pursuant to a declaration of the parties' respective rights and duties under the Policies, Plaintiffs further seek an injunction enjoining Hartford (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Extra Expense coverage in the Policies; and (2) ordering Hartford to comply with the terms of the Policies in regards to coverage decisions.

## COUNT VI – BREACH OF CONTRACT – EXTRA EXPENSE
### (On behalf of Nationwide Breach Class and New York Subclass)

115.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

116.    Plaintiffs and the class purchased property coverage policies from Hartford.

117.    The Policies are valid and enforceable contracts between Hartford and Plaintiffs and class members.

118.    Plaintiffs and the class substantially performed their obligations under the terms of the Policies including giving Hartford notice of the claim. Alternatively, Hartford has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

119.    Plaintiffs and the class have sustained a loss under the Extra Expense coverage in the Policies arising from COVID-19 virus and associated state and local Stay at Home orders.

120.    Hartford has denied claims for recovery under the Extra Expense coverage in the Policies related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

121.    As a direct and proximate result of Hartford's breaches, Plaintiffs and the class have sustained damages in an amount to be determined at trial.

## COUNT VII – DECLARATORY AND INJUNCTIVE RELIEF – SUE AND LABOR
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class and New York Subclass)

122.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

123.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

124.    An actual controversy has arisen and now exists between Plaintiffs and the class, on the one hand, and Hartford, on the other hand, concerning the respective rights and duties of the parties under the Policies.

125.    Plaintiffs contend that Hartford has breached the Policies in the following respects:

126.    Plaintiffs and the class have suffered losses covered by the Sue and Labor provision in the Policies.

127.    Hartford is obligated to pay Plaintiffs and the class for those losses.

128.    Hartford has not paid for those losses and is in breach.

129.    Plaintiffs therefore seek a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Hartford unlawful and in material breach of the Policies so that future controversies may be avoided.

130.    Pursuant to a declaration of the parties' respective rights and duties under the Policies, Plaintiffs further seek an injunction enjoining Hartford (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Sue and Labor provision; and (2) ordering Hartford to comply with the terms of the Policies in regards to coverage decisions.

## COUNT VIII – BREACH OF CONTRACT – SUE AND LABOR
### (On behalf of Nationwide Breach Class and New York Subclass)

131.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

132.    Plaintiffs and the class purchased property coverage policies from Hartford.

133.    The Policies are valid and enforceable contracts between Hartford and Plaintiffs and class members.

134.    Plaintiffs and class substantially performed their obligations under the terms of the Policies including giving Hartford notice of the claim. Alternatively, Hartford has waived any terms or conditions of coverage any may not assert any term or condition in the Policy as a defense to liability.

135.    Plaintiffs and the class have sustained a loss covered by the Sue and Labor provision in the Policies arising from the COVID-19 virus and associated state and local Stay at Home orders.

136.    Hartford has not agreed to pay the claim under the Sue and Labor provision or requested a proof of loss. Instead, Hartford has requested information not necessary to determine coverage.

137.    Hartford has denied claims for recovery under the Sue and Labor provision related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

138.    As a direct and proximate result of Hartford's breaches, Plaintiffs and the class have sustained damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, requests relief and judgment against Hartford as follows:

a. That the Court enter an order certifying the class, appointing Plaintiffs as representatives of the class, appointing Plaintiffs' counsel as class counsel, and

directing that reasonable notice of this action, as provided by Federal Rule of Civil

Procedure 23(c)(2), be given to the class;

b.  For a judgment against Hartford for the causes of action alleged against it;

c.  For compensatory damages in an amount to be proven at trial;

d.  For a declaration that Hartford's conduct as alleged herein is unlawful and in

material breach of the Policy;

e.  For appropriate injunctive relief, enjoining Hartford from continuing to engage in

conduct related to the breach of the Policy;

f.  For pre-judgment and post-judgment interest at the maximum rate permitted by

law;

g.  For Plaintiffs' attorney's fees;

h.  For Plaintiffs' costs incurred; and

i.  For such other relief in law or equity as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Date: June 29, 2020                    Respectfully submitted,

**KAPLAN GORE LLP**

By: /s/ Darren T. Kaplan_____
Darren T. Kaplan, DK-8190
1359 Broadway
Suite 2001
New York, NY 10018
Tel:    (212) 999-7370
Fax:    (404) 537-3320
dkaplan@kaplangore.com

**STUEVE SIEGEL HANSON LLP**

Patrick J. Stueve KS Bar #13847
(*pro hac vice application forthcoming*)
Bradley T. Wilder D. Kan #78301
(*pro hac vice application forthcoming*)
Curtis Shank KS Bar #26306
(*pro hac vice application forthcoming*)
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:     816-714-7100
Facsimile:     816-714-7101
Email:          stueve@stuevesiegel.com
Email:          wilders@stuevesiegel.com
Email:          shank@stuevesiegel.com

**LANGDON & EMISON LLC**

J. Kent Emison   D.Kan. #78360
(*pro hac vice application forthcoming*)
911 Main Street
PO Box 220
Lexington, Missouri 64067
Phone: (660) 259-6175
Fax: (660) 259-4571
kent@lelaw.com

**MILLER SCHIRGER LLC**

John J. Schirger  D. Kan. #78228
(*pro hac vice application forthcoming*)
Matthew W. Lytle D. Kan. #78109
(*pro hac vice application forthcoming*)
Joseph M. Feierabend  D. Kan. #78350
(*pro hac vice application forthcoming*)
4520 Main Street, Suite 1570
Kansas City, MO 64111
Telephone: (816) 561-6500
Facsimile:  (816) 561-6501
jschirger@millerschirger.com
mlytle@millerschirger.com
jfeierabend@millerschirger.com

**SHAFFER LOMBARDO SHURIN, P.C.**

Richard F. Lombardo  KS# 22326
(*pro hac vice application forthcoming*)
Dawn M. Parsons  KS# 16346
(*pro hac vice application forthcoming*)
Michael F. Barzee  KS# 27217
(*pro hac vice application forthcoming*)
Rachael D. Longhofer  KS# 25451
(*pro hac vice application forthcoming*)
2001 Wyandotte Street
Kansas City, MO 64108
816-931-0500
816-931-5775 (Fax)
rlombardo@sls-law.com
dparsons@sls-law.com
mbarzee@sls-law.com
rlonghofer@sls-law.com

*Attorneys for Plaintiffs and the Proposed Classes*